## MANSON et al. v. METROPOLITAN SURETY CO.

(Supreme Court, Appellate Division, First Department. November 13, 1908.)

1. INSURANCE (§ 668*)—BURGLARY INSURANCE—ACTIONS ON POLICIES—QUESTIONS FOR JURY—ACCEPTANCE OF POLICY—CREDIT FOR PREMIUM.

   Whether a burglary policy was accepted and credit given for the premium *held* to be for the jury.

   [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 668.*]

2. INSURANCE (§ 668*)—ACTIONS ON POLICIES—QUESTIONS FOR JURY—ACCEPTANCE OF POLICY.

   While the effect of the acceptance of a policy is a question of law, whether one has been accepted is a question of fact.

   [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 668.*]

3. APPEAL AND ERROR (§ 1052*) — REVIEW—HARMLESS ERROR — ADMISSION OF EVIDENCE—SUBSEQUENT CURE.

   In an action on a burglary policy, any error in allowing the quantity of goods cut from pieces of silk to be computed from unverified figures on the wrappers was cured, where plaintiff proved on rebuttal without objection that the figures on the wrappers were correct.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. § 1052.*]

   McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Morris Manson and others against the Metropolitan Surety Company. From a judgment for plaintiffs, and an order denying a new trial, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

David McClure, for appellant.
George Ryall, for respondents.

HOUGHTON, J. I think there was a question of fact for the jury as to whether or not the policy had been accepted by the plaintiffs. The defendant's agent had solicited the plaintiffs to take out a policy of insurance against burglary. The agent himself testifies that the plaintiffs agreed to take the policy, and it was made out for them, and that he delivered it to them, and that they then said that they wanted to inspect it, and were doubtful whether they would accept it because of the difficulty in collecting in case of loss. Thereupon the agent told them that he would have an officer of the company write the plaintiffs a letter explaining what was necessary in making proof of loss. While the policy was in the plaintiffs' possession an officer of the defendant wrote plaintiffs a letter explaining the requirements as to proof in case of loss, saying that the requirements were substantially those of a fire insurance policy. The agent made several visits to plaintiffs' place of business, and his testimony is to the effect that plaintiffs demurred to paying the premium because they had not yet made up their mind as to whether or not the policy was satisfactory and whether they would keep it.

The proof on the part of the plaintiffs to the contrary is that upon

receipt of the letter explaining the requirements as to proof of loss they were satisfied, and plaintiff Jacobson testified that he told the agent that, unless he heard from him after plaintiffs had received the letter from the company respecting proofs of loss, he could rest assured that the policy was all right, and that the agent replied to him, "If the policy is not wanted, then send it back." Another witness produced by the plaintiffs says that the agent demanded payment of the premium, and said they would have to pay for the insurance as long as they had the policy in their possession, whether they desired to continue it for the full year or not. During all these various interviews neither the agent nor the defendant ever demanded the return of the policy. It is quite manifest, from all the circumstances and testimony, that all parties assumed that the letter of explanation with respect to proving loss was satisfactory, and that all defendant was attempting to do was to collect the stipulated premium. Without demanding return of the policy, or canceling it because of nonpayment of premium, the defendant permitted it to remain in plaintiffs' possession from the 13th of July until the 1st of September, when the burglary occurred. According to plaintiffs' proof the agent was demanding payment of the premium, and according to the testimony of the plaintiff Jacobson the defendant was notified, through its agent, that unless they received word to the contrary after the letter had been written they could rely upon the fact that plaintiffs had elected to keep the policy.

Without taking into consideration the circumstances of plaintiffs drawing a check for payment of the premium prior to the incurring of the loss, a question of fact as to whether or not the policy was accepted and credit given for the premium was to my mind clearly made for the jury to pass upon. It was for them to say whether, from all the facts and circumstances, they believed the testimony of defendant's agent to the effect that plaintiffs continually asserted that they had not yet made up their minds whether they would accept the policy or whether they believed there had been an acceptance. While the effect of the acceptance of a policy of insurance is a question of law, whether one has or has not been accepted is a question of fact for the jury. New York Life Ins. Co. v. Easton, 69 Ill. App. 479.

Where an agent sent a policy by mail to an applicant for insurance, with a statement that the premium charged was higher than usual, and said: "Should you decline the policy, please return it by mail. If you retain it, please send me the premium"—it was held that this was a waiver of prepayment, and that the policy became effectual upon the insured retaining and thereby accepting it, or, at all events, that the question of acceptance should have been submitted to the jury. Sheldon v. Atlantic Fire & Marine Ins. Co., 26 N. Y. 460, 84 Am. Dec. 231. The facts in the case at bar are much stronger than those in the case last cited, in which the Court of Appeals held that a nonsuit on the ground of nonacceptance was error. If the question of acceptance was one for the jury, there surely is no such preponderance of evidence on the part of defendant of nonacceptance as calls upon this court to set aside the verdict as against the weight of evidence.

Nor do I think there was any reversible error committed upon the trial. There was sufficient proof of loss of the wrappers upon which was marked the quantity of goods cut off from the various pieces of silk to permit secondary evidence of such figures. The course of the trial shows that the defendant did not object to computations from these figures on the ground that there was no proof of the correctness of the figures on the lost wrappers. If, however, there was any error in permitting computation from these unverified figures, the plaintiffs upon rebuttal, without objection, through their witness Morris Manson, proved that all these markings on the wrappers, whether made by himself or by the cutter, were absolutely correct, and thus it was cured.

There does not seem to be any question that the plaintiffs sustained an honest loss through their establishment being burglarized, and I see no reason why the verdict of the jury should be disturbed.

The judgment and order should therefore be affirmed, with costs.

PATTERSON, P. J., and CLARKE and SCOTT, JJ., concur. McLAUGHLIN, J., dissents.